Ben Carter
Kentucky Bar No. 91352
KENTUCKY EQUAL JUSTICE CENTER
201 West Short Street, Suite 310,
Lexington, KY 40507
Phone: (502) 303-4062
ben@kyequaljustice.org

Michelle Kanter Cohen*
(D.C. Bar No. 989164)
Beauregard William Patterson*
(WI State Bar No. 1102842)
FAIR ELECTIONS CENTER
1825 K St. NW, Suite 701
Washington, DC 20006
Phone: (202) 331-0114
mkantercohen@fairelectionscenter.org
bpatterson@fairelectionscenter.org

Counsel for Plaintiff Kentuckians for the Commonwealth
*Pro Hac Vice applications forthcoming

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| KENTUCKIANS FOR THE COMMONWEALTH,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ADAMS, in his official capacity as the Secretary of State for Kentucky and Chair of the Kentucky State Board of Elections, ALBERT B. CHANDLER III, in his official capacity as a member of the Kentucky State Board of Elections, ERIC G. FARRIS, in his official capacity as a member of the Kentucky State Board of Elections, JERRY D. JOHNSON, in his official capacity as a member of the Kentucky State Board of Elections, SUE CAROLE PERRY, in her official capacity as a member of the | Case No. 3:24-cv-387-BJB<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; STATEWIDE RELIEF SOUGHT** |

Kentucky State Board of Elections, DEANNA BRANGERS, in her official capacity as a member of the Kentucky State Board of Elections, JULIE GRIGGS, in her official capacity as a member of the Kentucky State Board of Elections, CORY SKOLNICK, in his official capacity as a member of the Kentucky State Board of Elections, DWIGHT SEARS, in his official capacity as a member of the Kentucky State Board of Elections,

Defendants.

Plaintiff Kentuckians for the Commonwealth ("Plaintiff" or "KFTC") brings this Complaint against the above-named Defendants. In support of this Complaint, Plaintiff alleges the following:

## NATURE OF THE ACTION

1. This action is necessary to protect the inviolable right of Kentuckians to vote without interference and to prevent the unlawful removal of Kentuckians from the Commonwealth's voter registration rolls. Specifically, this suit challenges Ky. Rev. Stat. § 116.113(4), as amended by Kentucky House Bill 574 (2021). On its face, Ky. Rev. Stat. § 116.113(4) violates the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501–20511.

2. The NVRA was enacted to protect United States citizens from discriminatory and unfair registration laws, with particular emphasis on those

practices that negatively impact voter participation among minority groups, including racial minorities. To this end, the NVRA establishes, among other things, standards and procedures to ensure the accuracy of voter registration rolls including safeguards to prevent still-eligible voters from removal.

3. Among these protections, the NVRA establishes specific requirements states must satisfy before removing a voter from the registration rolls. Pursuant to the NVRA, an election administrator cannot cancel a voter's registration because the administrator believes the voter has moved unless the voter: (i) receives a formal notice, in writing, that the voter's address needs to be confirmed; and (ii) is given adequate opportunity to respond to the notice or demonstrate continued residency by voting.

4. Kentucky Rev. Stat. § 116.113(4), as recently amended by Kentucky House Bill 574 (2021), flagrantly violates these requirements by, removing voters on the basis that they have changed residence without the notice, response opportunity, and waiting period expressly required by the NVRA for removals on that ground.

## PARTIES

*Plaintiff*

5. Plaintiff Kentuckians for the Commonwealth (hereafter KFTC) is a nonprofit based in and organized under the laws of the Commonwealth of Kentucky. KFTC is a nonpartisan grassroots organization founded in 1981. It

has 12 chapters across the commonwealth and over 14,000 dues paying members. Louisville has KFTC's largest membership body with over 2,000 members. The organization and its members are committed to equality, democracy and non-violent change. Its mission is to challenge and change unfair political, economic and social systems by working for a new balance of power and a just society. At the core if its mission, KFTC uses its resources for grassroots power-building and increasing engagement in local, state, and federal democracy. One of the key ways KFTC achieves this is through its statewide in-person voter registration program, which seeks to register low propensity voters such as people with low socioeconomic status, young people, people of color, the formerly incarcerated, and pre-trial detainees. It sues herein on its own behalf and on behalf of its of its members.

6. For Kentucky's 2023 Governor's race, KFTC directly[1] registered over 2,000 new voters through its in-person voter registration program. This year KFTC expects to directly register even more prospective voters due to the presidential race. To that end, KFTC is hiring at least 15 people across the state, who will support its voter registration program. To support its voter registration efforts, KFTC provides important education and voter registration

---

[1] By direct registration, KFTC means that it provided an individual with a copy of the paper voter registration form and turned in the completed form to the corresponding County Board of Elections.

4

training, including webinars and field training, to its staff and allies committed to in-person voter registration work.

7. In addition to the people KFTC directly registers, its staff is trained to confirm whether a person is currently registered and provides information on how voters may register themselves if they are unable to complete a registration form at one of KFTC's in-person events. KFTC has staffed voter registration tables for decades. Its voter registration program is a large percentage of its public facing work, and it is recognizable across the state for its voter registration tables.

8. The illegal effects of Ky. Rev. Stat. § 116.113(4) directly frustrates KFTC's civic mission and causes it to expend its limited financial resources and staff time. Ky. Rev. Stat. § 116.113(4) will improperly purge eligible voters that KFTC has already registered, force KFTC to re-register improperly purged voters, will require KFTC to unnecessarily expand its voter registration education, and will compel its members to monitor their voter registration status to ensure that they are not disenfranchised because of being purged from the voter rolls without notice. KFTC will have to divert time, money, and other resources from other activities to register and assist Kentuckians because of improper voter purges. Further, by depriving registered voters and qualified citizens of the NVRA's safeguards prior to removing their names from

5

the voting rolls, Ky. Rev. Stat. § 116.113(4) creates the real and immediate risk that some of KFTC's 14,000 members will be deprived of their right to vote.

*Defendants*

9. Defendant Michael Adams is the Secretary of State of Kentucky and is sued in his official capacity. The Secretary is the Commonwealth's Chief Election Official[2] and serves as a nonvoting member and chair of the Kentucky Board of Elections, an independent agency that administers the Commonwealth's election laws and promulgates administrative regulations necessary to properly carry out its duties. Ky. Rev. Stat. Ann. §§ 14.025(4), 117.015.[3]

10. Defendants Albert B. Chandler III, DeAnna Brangers, J. Michael Brown, Julie Griggs, Jerry D. Johnson, Sue Carole Perry, Dwight Sears, and Cory Skolnick are the current board members of the Kentucky Board of Elections and are sued in their official capacities. The members of the Kentucky Board of Elections have the authority to "promulgate administrative regulations as necessary" to "administer the election laws of the state."[4]

---

[2] Ky. Sec'y of State, *SOS Office*, https://www.sos.ky.gov/elections/Pages/default.aspx (last visited Dec. 8, 2023); *See* Consent Judgment, *Judicial Watch v. Lundergan*, ¶¶ 31(c), 34(d)(ii), 34(g), ECF No. 39, No. 3:17-cv-94 (E.D. Ky. July 3, 2018).
[3] Ky. Rev. Stat. § 117.015(3).
[4] Ky. Rev. Stat. § 117.015(1).

6

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the laws of the United States; under 28 U.S.C. §§ 1343(a)(3)–(4) and 1357 because this action seeks equitable and other relief pursuant to an act of Congress providing for the protection of the right to vote; and under 42 U.S.C. §§ 1983 and 1988 because this action seeks to enforce rights and privileges secured by the laws of the United States.

12. This Court has authority to issue declaratory and injunctive relief in this action pursuant to 28 U.S.C. §§ 2201 and 2202.

13. Venue is proper in the Western District of Kentucky under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims have occurred and will continue to occur in this district.

## FACTS

### *National Voter Registration Act*

14. The National Voter Registration Act of 1993, 52 U.S.C. §§ 20501–20511 (the "NVRA"), sets forth mandatory procedures for state election officials that further the statute's several purposes, including to "increase the number of eligible citizens who register to vote in elections for Federal office;" "to protect the integrity of the electoral process;" and "to ensure that accurate and current voter registration rolls are maintained." *Id*. § 20501(b)(1), (3)-(4).

15. To protect the registration of voters who remain eligible, Section 8 of the NVRA protects registered voters against wrongful removal from the voter registration lists. As relevant here, it prohibits the removal of registered voters on the basis of change in residence unless the registrant: (1) confirms the change of residence in writing; or (2) fails to respond to a notice, the contents and manner of mailing of which are prescribed by the NVRA, and fails to vote during the next two general election cycles after receiving the notice. *Id.* § 20507(d)(1).

16. Specifically, where a voter has not directly confirmed a change of address or themselves requested removal from the voter rolls, the state cannot cancel the voter's registration unless it has sent the voter: (1) a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address; and (2) a notice to the following effect:

> (B) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration …. If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.

> (B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.

*Id.* § 20507(d)(2).

17. Election officials may not subsequently remove a voter based on change of address unless *the voter* either confirms the move in writing or: (i) "has failed to respond to" an address confirmation notice; and (ii) "has not voted or appeared to vote (and, if necessary, correct[ed] the registrar's record of the registrant's address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice." *Id.* § 20507(d)(1)(A)-(B) (emphasis added).

18. The Supreme Court has construed the statute as prohibiting a state from removing "a registrant's name on change-of-residence grounds unless either (A) the registrant confirms in writing that he or she has moved or (B) the registrant fails to return a preaddressed postage prepaid 'return card' containing statutorily prescribed content" and fails to vote "for a period covering two general elections for federal office (usually about four years)." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1838–39 (2018).

19. "If the State does not send such a card or otherwise get written notice that the person has moved, it may not remove the registrant on change-

9

of-residence grounds." *Id.* at 1839; *see also U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 381–82 (6th Cir. 2008) ("We believe that, if a person is a 'registrant,' a state may not remove his or her name from an official registration list on the grounds that his or her residence has changed unless the specified criteria of [52 U.S.C. § 20507(d)] are met.").

20. The NVRA safeguards accuracy, and the right to procedural due process by outlining specific steps states must follow before cancelling a voter's record due to a change of address. *See U.S. Student Ass'n Found.*, 546 F.3d at 381 (noting Section 8(d) "limits the methods which a state may use to remove individuals from its voting rolls and is meant to ensure that eligible voters are not disenfranchised by improper removal").

21. Following previous failures to comply with Section 8 of the NVRA caused by a lack of funding, the State of Kentucky agreed to a Consent Judgment, which is currently under effect, that explicitly requires the state to follow the removal procedures established in 52 U.S.C. § 20507(d).[5] *Jud. Watch, Inc. v. Adams*, 485 F. Supp. 3d 831, 833 (E.D. Ky. 2020); *Jud. Watch, Inc. v. Adams*, 485 F. Supp. 3d 831, 833 (E.D. Ky. 2020).

22. Additionally, the State of Kentucky incorporated the provisions of Section 8(d) into state law through Ky. Rev. Stat. § 116.112(4)(a)-(b).

---

[5] Consent Judgment accessible at https://www.judicialwatch.org/wp-content/uploads/2018/07/JW-v-Grimes-KY-Consent-00094-1.pdf

23. Under Ky. Rev. Stat. § 116.112(4)(a)-(b), the state or county boards of elections cannot not remove registered voters on the grounds that the voter has changed residence unless the voter: (a) confirms in writing that the voter has changed residence to a place outside the county; or (b) fails to respond to the notice and has not voted or appeared to vote and, if necessary, correct the registration records of the voter's address in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice. Ky. Rev. Stat. § 116.112(4)(a)-(b).

24. Notice for such a removal must be provided by "a postage prepaid and pre-addressed return card, sent by forwardable mail on which the voter may state his current address." Ky. Rev. Stat. § 116.112(3)(a).

### *Ky. Rev. Stat. § 116.113 violates NVRA Section 8(d)*

25. The plain language of Ky. Rev. Stat. § 116.113(4) denies voters the protections of Section 8(d).

26. Ky. Rev. Stat. § 116.113(4) mandates that "[u]pon receipt of notification from a local or state jurisdiction that a voter has registered to vote in the new local or state jurisdiction outside of the Commonwealth, the State Board of Elections shall within five (5) days cause the removal of the name of that person from the voter registration records that it maintains, except that

11

no voter's name may be removed during the period of time the registration books are closed for any primary, regular election, or special election.

27. In contrast, under Section 8(d) of the NVRA, residency-based removal pursuant to a notice received by the election official can be based only on a notice "from the voter". 52 U.S.C. § 20507(d). As a result, unless *the registrant* provides information directly to the official regarding their move, a voter's registration cannot be cancelled unless the voter (1) receives statutorily compliant notice and also (2) fails to vote or update their information during the next two general federal election cycles after receiving that notice.

28. As written, Ky. Rev. Stat. § 116.113(4) violates Section 8(d) because it requires the State Board of Elections to cancel a voter's registration without providing the voter with statutorily complaint notice or after the statutorily mandated waiting period. Notably, rather than requiring direct contact from the voter regarding any change in residence, Ky. Rev. Stat. §1116.113(4) relies only on "receipt of notification from a local or state jurisdiction." The statute mandates that the State Board cancel a voter's registration solely based on the information provided by out-of-state officials without ever attempting to make contact with the voter, and that they do so within 5 days.

12

29. Although Ky. Rev. Stat. § 116.113(5) outlines a protest process by which removed voters may have their registration restored, a voter can only initiate this process "[f]ollowing the purge of [the voter's] name from the records of the State Board of Elections." Ky. Rev. Stat. § 116.113(5). Putting the onus on the voter to apply to restore their registration is contrary to the requirements of Section 8.

30. The facial defects of Ky. Rev. Stat. § 116.113(4) mirror that of a recently enjoined Indiana statute, which required county voter registration offices to cancel a voter's registration if an office determined that the voter's record matched that of a voter registration record subsequently created in another state. *Common Cause v. Lawson*, 937 F.3d 944, 958 (7th Cir. 2019); *League of Women Voters of Ind. v. Sullivan*, 5 F.4th 714, 724 (7th Cir. 2021).

31. The Seventh Circuit enjoined Indiana's law for violating Section 8(d), concluding that the law "impermissibly allow[ed] Indiana to cancel a voter's registration without either direct communication from the voter or compliance with the NVRA's notice-and-waiting procedures." *Id.*

32. As in *Common Cause v. Lawson,* Ky. Rev. Stat. § 116.113(4) violates Section 8(d), because it requires the State Board to cancel a voter's registration without direct contact with the voter or compliance with the NVRA's notice-and-waiting procedures.

33. Therefore, on its face, Ky. Rev. Stat. § 116.113(4) violates Section 8(d) of the NVRA.

*Plaintiff provided Kentucky officials with adequate notice of NVRA violations*

34. On August 31, 2023, Plaintiff KFTC sent notice to Secretary Michael Adams, pursuant to 52 U.S.C. § 20510(b), that Ky. Rev. Stat. § 116.113(4) violates the NVRA.[6]

35. The Secretary of State's General Counsel and Assistant Secretary of State, Jennifer Scutchfield, acknowledged receipt of the notice letter on September 7, 2023.

36. The members of the Kentucky Board of Elections were placed on notice by the August 31, 2023, letter sent to Secretary Adams, who chairs the Board.[7] Further, Plaintiff sent an additional copy of the notice letter to the Board's general counsel, Taylor Brown, on Sept. 11, 2023.[8]

37. As part of the notice letter, Plaintiff submitted an open records request to Defendants asking for records concerning the implementation of Ky.

---

[6] Exhibit A: Notice Letter from Beauregard Patterson *et al.* to Secretary Adams and Members of the State Board of Elections (August 31, 2023); Exhibit B: Email transmittal of Notice Letter to Assistant Secretary of State, Jennifer Scutchfield.

[7] As the Commonwealth's Chief Election Official and chair of the State Board of Elections, receipt of the notice letter by Secretary Adams served as notice on the State Board of Elections as well as the Secretary of State.

[8] Exhibit C, Email transmittal of Notice Letter to SBOE General Counsel, Taylor Brown.

14

Rev. Stat. § 116.113(4) and documenting the number of voters removed from the voter rolls pursuant Ky. Rev. Stat. § 116.113(4). However, Defendants provided no response to Plaintiff's request.

## COUNT I
Violation of the NVRA, 52 U.S.C. §20507(d), 42 U.S.C. § 1983

38. Plaintiff incorporates every allegation of the preceding paragraphs as though fully set forth herein.

39. Under the NVRA, if a state undertakes to remove registered voters on the basis of a change in residence, the state must provide that voter with notice, the opportunity to respond to that notice, and the statutorily required waiting period for response. In particular, the NVRA prohibits such removals unless the registrant either: (1) confirms the change of residence in writing, or (2) fails to respond to a notice, the contents and manner of mailing of which are prescribed by the NVRA, and fails to vote during the next two general federal election cycles after receiving the notice. *Id.* §20507(d).

40. Adequate notice for such a removal must be provided by "a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address." Id. §20507(d)(2).

41. On its face, Ky. Rev. Stat. § 116.113(4), violates the NVRA by requiring the removal of voters without the requisite notice, response opportunity, and waiting period required by federal law.

15

42. Ky. Rev. Stat. § 116.113(4) does not require the State Board of Elections or clerks to make contact with a voter believed to have moved out of state before removing that voter from the rolls; instead, it requires immediate cancellation. Under the provision,

> [u]pon receipt of notification from a local or state jurisdiction that a voter has registered to vote in the new local or state jurisdiction outside of the Commonwealth, the State Board of Elections shall within five (5) days cause the removal of the name of that person from the voter registration records that it maintains, except that no voter's name may be removed during the period of time the registration books are closed for any primary, regular election, or special election.

Ky. Rev. Stat. § 116.113(4).

43. None of Ky. Rev. Stat. § 116.113's procedures require the State Board to send a voter a pre-removal notice prior to cancelling that voter's registration.

44. Rather, the only procedure available to a voter, who wishes to dispute cancellation, is post-removal relief, available under Ky. Rev. Stat. § 116.113(5), for wrongfully removed voters.

45. Therefore, Ky. Rev. Stat. § 116.113(4) violates the NVRA's requirement that a voter may be removed from the rolls by reason of change of address only if "*the registrant*—(A) confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered," 52 U.S.C. § 20507(d)(1)(A) (emphasis added), or if the

voter fails to respond to a confirmation notice or vote in the statutorily identified timeframe. *Id.* § 20507(d)(1)(B); *A. Philip Randolph Inst.*, 138 S. Ct. at 1838–39.

46. By requiring cancellation of a voter's registration if an *out-of-state election official*—and not the voter in question—informs Kentucky officials of an out-of-state registration potentially by that voter, Ky. Rev. Stat. § 116.113(4) does not provide a voter with notice and the statutorily required waiting period of two federal general election cycles to respond or vote.

47. By depriving registered voters of the NVRA's safeguards prior to removing their names from the voting rolls, Ky. Rev. Stat. § 116.113(4) creates the real and immediate risk that some of Plaintiff's members will be deprived of their right to vote. Further, Ky. Rev. Stat. § 116.113(4), creates the real and immediate risk that voters registered by KFTC will be purged without notice, thus frustrating KFTC's voter registration program and forcing it to divert resources and staff time to re-register improperly purged voters and expand its voter registration education for staff, members, and prospective voter registrants.

48. On information and belief, registrants identified for cancellation under Ky. Rev. Stat. § 116.113(4) have been removed from the voter rolls via procedures that violate Section 8(d) of the NVRA.

49. Kentucky voters are at manifest risk of suffering a Section 8(d) violation as the Secretary of State's Office engages in large-scale voter roll maintenance, such as the recent cancellation of approximately 127,000 registrants in February 2023.[9]

50. Absent this Court's intervention, KFTC and its members will suffer irreparable injury as a result of Defendants' implementation of Ky. Rev. Stat. § 116.113(4).

51. KFTC and its members have no adequate remedy at law for the deprivation of their federal statutory rights protected by the NVRA and for the interference with KFTC's ability to protect its organizational interests and/or its members' interests caused by Defendants' actions.

52. Defendants must be enjoined from enforcing Ky. Rev. Stat. § 116.113(4) in a way that violates the NVRA's requirements of notice and a waiting period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court order the following relief and remedies:

A. Declare that the voter removal provisions of Ky. Rev. Stat. § 116.113(4) violate 52 U.S.C. § 20507(d);

---

[9]State Board of Elections, *Why is Kentucky Purging Voter Registrations?*, *accessible at* https://elect.ky.gov/Resources/Documents/2023%20Purge%20One%20Pager.pdf

B. Grant a permanent injunction enjoining Defendants and any officers, agents, employees, attorneys, and all persons who are in active concert or participation with them from canceling the registration of voters without following the required procedures set forth in 52 U.S.C. § 20507(d);

C. Award Plaintiff's attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and/or 52 U.S.C. § 20510(c); and

D. Award all such other and further relief as the Court deems to be just and equitable.

Respectfully submitted,

Dated: June 27, 2024

By: */s/ Ben Carter*
Ben Carter
Kentucky Bar No. 91352
**KENTUCKY EQUAL JUSTICE CENTER**
201 West Short Street, Suite 310,
Lexington, KY 40507
ben@kyequaljustice.org
Phone: (502) 303-4062

Michelle Kanter Cohen*
(D.C. Bar No. 989164)
Beauregard William Patterson*
(WI State Bar No. 1102842)
**FAIR ELECTIONS CENTER**
1825 K St. NW, Suite 701
Washington, DC 20006
mkantercohen@fairelectionscenter.org
bpatterson@fairelectionscenter.org
Phone: (202) 331-0114

*Pro Hac Vice applications forthcoming*

*Counsel for Plaintiff Kentuckians for the Commonwealth*