Jackson Cooper
Kentucky Bar No. 94297
KENTUCKY EQUAL JUSTICE CENTER
201 West Short Street, Suite 310
Lexington, KY 40507
Phone: (502) 303-4062
jackson@kyequaljustice.org

Michelle Kanter Cohen*
(D.C. Bar No. 989164)
Beauregard William Patterson*
(WI State Bar No. 1102842)
FAIR ELECTIONS CENTER
1825 K St. NW, Suite 701
Washington, DC 20006
Phone: (202) 331-0114
mkantercohen@fairelectionscenter.org
bpatterson@fairelectionscenter.org

Counsel for Plaintiff Kentuckians for the Commonwealth
*Admitted Pro Hac Vice

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

KENTUCKIANS FOR THE
COMMONWEALTH,

           Plaintiff,

      v.

MICHAEL ADAMS, in his official
capacity as the Secretary of State for
Kentucky and Chair of the Kentucky
State Board of Elections, ERIK G.
FARRIS, in his official capacity as a
member of the Kentucky State Board of
Elections, JERRY D. JOHNSON, in his
official capacity as a member of the
Kentucky State Board of Elections, SUE
CAROLE PERRY, in her official capacity
as a member of the Kentucky State Board
of Elections, DEANNA BRANGERS, in

Case No. 3:24-cv-387-BJB

**FIRST AMENDED
COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

her official capacity as a member of the Kentucky State Board of Elections, JULIE GRIGGS, in her official capacity as a member of the Kentucky State Board of Elections, CORY SKOLNICK, in his official capacity as a member of the Kentucky State Board of Elections, DWIGHT SEARS, in his official capacity as a member of the Kentucky State Board of Elections, and ROSS COLLINS OWENS III, in his official capacity as a member of the Kentucky State Board of Elections,

Defendants.

Plaintiff Kentuckians for the Commonwealth ("Plaintiff" or "KFTC") brings this First Amended Complaint against the above-named Defendants. In support of this First Amended Complaint, Plaintiff alleges the following:

## NATURE OF THE ACTION

1.    This action is necessary to protect the inviolable right of Kentuckians to vote without interference and to prevent the unlawful removal of Kentuckians from the Commonwealth's voter registration rolls. Specifically, this suit challenges Kentucky Revised Statute ("KRS") § 116.113(5), as amended by Kentucky House Bill 574 (2021). On its face, KRS § 116.113(5)

violates the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501–20511.

2.    The NVRA was enacted to protect United States citizens from discriminatory and unfair registration laws, with particular emphasis on those practices that negatively impact voter participation among minority groups, including racial minorities. 52 U.S.C. § 20501. To this end, the NVRA establishes, among other things, standards and procedures to ensure the accuracy of voter registration rolls, including safeguards to prevent still-eligible voters from removal. In doing so, Congress sought to balance its interests in increasing the number of eligible citizens who register to vote, enhancing the participation of eligible citizens, protecting the integrity of the electoral process, and ensuring accurate and current voter rolls are maintained. *Id.*

3.    Among these protections, the NVRA establishes specific requirements states must satisfy before removing a voter from the registration rolls. Pursuant to the NVRA, an election administrator cannot cancel a voter's registration because the administrator believes the voter has moved unless the voter: (i) receives a formal notice, in writing, that the voter's address needs to be confirmed; and (ii) is given adequate opportunity to respond to the notice or demonstrate continued residency by voting. *Id.* § 20507(d)(1).

4.    KRS § 116.113(5), as recently amended by Kentucky House Bill 574 (2021), flagrantly violates these requirements by requiring that voters be removed on the basis that they have changed residence without the notice, response opportunity, and waiting period expressly required by the NVRA for removals on that ground.

## PARTIES

### *Plaintiff*

5.    Plaintiff Kentuckians for the Commonwealth ("KFTC") is a nonprofit based in and organized under the laws of the Commonwealth of Kentucky. KFTC is a nonpartisan grassroots organization founded in 1981. It has 12 chapters across the Commonwealth and over 14,000 members. Louisville has KFTC's largest membership body with over 2,000 members. The organization and its members are committed to equality, democracy, and non-violent change. KFTC sues herein on its own behalf.

### *Defendants*

6.    Defendant Michael Adams is the Secretary of State of Kentucky and is sued in his official capacity. The Secretary is the Commonwealth's Chief Election Official[1] and serves as a nonvoting member and chair of the Kentucky

---

[1] Ky. Sec'y of State, *SOS Office*, https://www.sos.ky.gov/sos-office/Pages/default.aspx (last visited Feb. 27, 2025); *see* Consent Judgment, *Judicial Watch v. Grimes*, ¶¶ 31(c), 34(d)(ii), 34(g), ECF No. 39, No. 3:17-cv-94 (E.D. Ky. July 3, 2018), available at

Board of Elections, an independent agency that administers the Commonwealth's election laws and promulgates administrative regulations necessary to properly carry out its duties. KRS §§ 14.025(4), 117.015.

7.    **Defendants** Erik G. Farris, Jerry D. Johnson, Sue Carole Perry, DeAnna Brangers, Julie Griggs, Cory Skolnick, Dwight Sears, and Ross Collins Owens III are the current board members of the Kentucky Board of Elections and are sued in their official capacities. The members of the Kentucky Board of Elections have the authority to "promulgate administrative regulations necessary" to "administer the election laws of the state."[2]

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the laws of the United States; under 28 U.S.C. §§ 1343(a)(3)–(4) and 1357 because this action seeks equitable and other relief pursuant to an act of Congress providing for the protection of the right to vote; and under 42 U.S.C. §§ 1983 and 1988 because this action seeks to enforce rights and privileges secured by the laws of the United States.

9.    This Court has authority to issue declaratory and injunctive relief in this action pursuant to 28 U.S.C. §§ 2201 and 2202.

---

https://www.judicialwatch.org/wp-content/uploads/2018/07/JW-v-Grimes-KY-Consent-00094-1.pdf.
[2] KRS § 117.015(1), (1)(a).

10.    Venue is proper in the Western District of Kentucky under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims have occurred and will continue to occur in this district.

## FACTS

### *National Voter Registration Act*

11.    The National Voter Registration Act of 1993, 52 U.S.C. §§ 20501–20511, sets forth mandatory procedures for state election officials that further the statute's several explicit statutory purposes, including to "increase the number of eligible citizens who register to vote in elections for Federal office;" "to protect the integrity of the electoral process;" and "to ensure that accurate and current voter registration rolls are maintained." *Id*. § 20501(b)(1), (3)–(4).

12.    To protect the registration of voters who remain eligible, Section 8 of the NVRA provides explicit safeguards to protect registered voters against wrongful removal from the voter registration lists. As relevant here, it prohibits the removal of registered voters on the basis of change in residence unless the registrant: (1) confirms the change of residence in writing; or (2) fails to respond to a notice, the contents and manner of mailing of which are prescribed by the NVRA, and fails to vote during the next two general election cycles after receiving the notice. *Id*. § 20507(d)(1).

13.    Specifically, where a voter has not directly confirmed a change of address or themselves requested removal from the voter rolls, the state cannot

cancel the voter's registration unless it has sent the voter: (1) a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address, *id.* § 20507(d)(1)–(2); and (2) a notice to the following effect:

> (A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration . . . . If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.
>
> (B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.

*Id.* § 20507(d)(2)(A)–(B).

14.    Election officials may not subsequently remove a voter based on change of address unless *the voter* either confirms the move in writing or: (i) "has failed to respond to" an address confirmation notice; and (ii) "has not voted or appeared to vote (and, if necessary, correct[ed] the registrar's record of the registrant's address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election

for Federal office that occurs after the date of the notice." *Id*. § 20507(d)(1)(A)– (B).

15.    The Supreme Court has construed the statute as prohibiting a state from removing "a registrant's name on change-of-residence grounds unless either (A) the registrant confirms in writing that he or she has moved or (B) the registrant fails to return a preaddressed, postage prepaid 'return card' containing statutorily prescribed content" and fails to vote "for a period covering two general elections for federal office (usually about four years)." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1838–39 (2018).

16.    "If the State does not send such a card or otherwise get written notice that the person has moved, it may not remove the registrant on change-of-residence grounds." *Id*. at 1839; *see also U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 381–82 (6th Cir. 2008) ("We believe that, if a person is a 'registrant,' a state may not remove his or her name from an official registration list on the grounds that his or her residence has changed unless the specified criteria of [52 U.S.C. § 20507(d)] are met.").

17.    The NVRA safeguards accuracy, and the right to procedural due process by outlining specific steps states must follow before cancelling a voter's record due to a change of address. *See U.S. Student Ass'n Found.*, 546 F.3d at 381 (noting Section 8(d) "limits the methods which a state may use to remove

individuals from its voting rolls and is meant to ensure that eligible voters are not disenfranchised by improper removal").

18.    Following previous failures to comply with Section 8 of the NVRA caused by a lack of funding, the Commonwealth of Kentucky agreed to a Consent Judgment (effective through October 31, 2023)[3] that explicitly required the Commonwealth to follow the removal procedures established in 52 U.S.C. § 20507(d). *Jud. Watch, Inc. v. Adams*, 485 F. Supp. 3d 831, 833–34 (E.D. Ky. 2020).

19.    Additionally, the Commonwealth of Kentucky incorporated the provisions of Section 8(d) into state law through KRS § 116.112(4)(a)–(b).

20.    Under KRS § 116.112(4)(a)–(b), the state or county boards of elections cannot remove registered voters on the grounds that the voter has changed residence unless the voter: (a) confirms in writing that the voter has changed residence to a place outside the county; or (b) fails to respond to the notice and has not voted or appeared to vote and, if necessary, correct the registration records of the voter's address in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice. KRS § 116.112(4)(a)–(b).

---

[3] Consent Judgment, s*upra*, n.1.

21.    Notice for such a removal must be provided "by forwardable mail . . . with a postage prepaid and pre-addressed return card on which the voter may state his current address." KRS § 116.112(3)(a).

### *KRS § 116.113(5) violates NVRA Section 8(d)*

22.    The plain language of KRS § 116.113(5) denies voters the protections of Section 8(d).

23.    KRS § 116.113(5) mandates that on "receipt of notification from a local or state jurisdiction that a voter has registered to vote in the new local or state jurisdiction outside of the Commonwealth, the State Board of Elections shall within five (5) days cause the removal of the name of that person from the voter registration records that it maintains" with the exception that "no voter's name may be removed during the period of time the registration books are closed for any primary, regular election, or special election."

24.    In contrast, under Section 8(d) of the NVRA, a state cannot purge a voter based on a change in residency unless "*the registrant*—confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered" or when a registrant both has (i) failed to respond to a notice from the state and (ii) has not voted or appeared to vote (and, if necessary, correct the registrar's record of the registrant's address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second

10

general election for Federal office that occurs after the date of the notice. 52 U.S.C. § 20507(d)(1) (emphasis added).

25.    The NVRA's notice and waiting period provides a voter the opportunity to demonstrate their continued eligibility at their registered address by voting at their registered address during the waiting period or responding to the state's notice to say they still live there. It also gives the state an opportunity to confirm that the voter has moved before removing that voter from the rolls. For example, the voter can respond to the state's notice to say they have moved, or they may fail to respond to the notice within two federal election cycles, giving the state the go-ahead to remove the voter from the rolls.

26.    As written, KRS § 116.113(5) violates Section 8(d) because it does not require a voter's written confirmation of their change in address before triggering the 5-day cancellation period. Rather, cancellation is mandated merely on receipt of notification from an out-of-state official that a voter has registered in a new jurisdiction. The statute does not define "receipt of notification."[4]

27.    Although KRS § 116.113(6) outlines a protest process by which removed voters may have their registration restored, a voter can only initiate

---

[4] A mere phone call or the submission of a purge list from an out-of-state election official, with no documentation to support the purge, may be enough to mandate the Board to cancel a voter's registration.

this process "[f]ollowing the purge of [the voter's] name from the records of the State Board of Elections," KRS § 116.113(6), putting the onus on the voter to apply to restore their registration is contrary to the requirements of the NVRA.

28.    Moreover, KRS § 116.113(5) does not require Defendants to notify voters that they have been purged under the statute.

29.    A purged voter is unlikely to discover that they have been purged until attempting to vote in an election.

30.    Further, the lack of notice prevents voters from exercising their right to challenge a wrongful purge pursuant KRS § 116.113(6).

31.    KRS § 116.113(5)'s defects mirror that of a recently enjoined Indiana statute, which required county voter registration offices to cancel a voter's registration if an office determined that the voter's record matched that of a voter registration record subsequently created in another state. *Common Cause Ind. v. Lawson*, 937 F.3d 944, 958 (7th Cir. 2019); *see also League of Women Voters of Ind. v. Sullivan*, 5 F.4th 714, 724 (7th Cir. 2021) (upholding the Court's injunction in *Common Cause v. Lawson*).

32.    The Seventh Circuit enjoined Indiana's law for violating Section 8(d), concluding that the law "impermissibly allow[ed] Indiana to cancel a voter's registration without either direct communication from the voter or compliance with the NVRA's notice-and-waiting procedures." *League of Women Voters*, 5 F.4th at 724. "The critical fact here is that the *registrant* must inform

the state about the change in residence, or the *registrant* must fail to respond to a notice sent by the state inquiring about continued eligibility." *Common Cause*, 937 F.3d at 948.

33.    Because Congress struck a balance under Section 8 in determining safeguards for eligible voters' registration under the NVRA while still providing for reasonable list maintenance, a state may not remove a voter from the rolls based solely on a notice from an out-of-state official that a voter has registered to vote in another state, even assuming the information is accurate. "The accuracy or lack thereof of the state's information concerning the voter's change in residence makes no difference under the NVRA." *Id*. at 959. A state cannot immediately remove a voter's name from the rolls, "when a state does not itself possess a copy of a communication from a suspected [state] registrant" confirming the registrant's change of address. *Id*. at 961.

34.    As in *Common Cause v. Lawson*, KRS § 116.113(5) violates Section 8(d), because it requires the State Board to cancel a voter's registration without either possessing a voter's written confirmation of a change in residency or complying with the NVRA's notice-and-waiting procedures.

35.    Therefore, on its face, KRS § 116.113(5) violates Section 8(d) of the NVRA.

*Plaintiff provided Kentucky officials with adequate notice of NVRA violations*

36.    On August 31, 2023, Plaintiff KFTC sent notice to Secretary Michael Adams, pursuant to 52 U.S.C. § 20510(b), that KRS § 116.113(5) violates the NVRA.[5]

37.    The Secretary of State's General Counsel and Assistant Secretary of State, Jennifer Scutchfield, acknowledged receipt of the notice letter on September 7, 2023.

38.    The members of the Kentucky Board of Elections were placed on notice by the August 31, 2023, letter sent to Secretary Adams, who chairs the Board.[6] Further, Plaintiff sent an additional copy of the notice letter to the Board's general counsel, Taylor Brown, on September 11, 2023.[7]

39.    As part of the notice letter, Plaintiff submitted an open records request pursuant to the NVRA, 52 U.S.C. § 20510(b), to Defendants asking for records concerning the implementation of KRS § 116.113(5). Information sought pertaining to voters removed from the voter rolls pursuant to KRS § 116.113(5) included: first, middle and last name, birthdate, phone number,

---

[5] Exhibit A: Notice Letter ("2023 NVRA Notice Letter") from Beauregard Patterson, *et al.* to Secretary Adams and Members of the State Board of Elections (August 31, 2023); Exhibit B: Email transmittal of 2023 NVRA Notice Letter to Assistant Secretary of State, Jennifer Scutchfield (August 31, 2023).

[6] As the Commonwealth's Chief Election Official and chair of the State Board of Elections, receipt of the notice letter by Secretary Adams served as notice on the State Board of Elections as well as the Secretary of State.

[7] Exhibit C: Email transmittal of 2023 NVRA Notice Letter to SBOE General Counsel, Taylor Brown (September 11, 2023).

email address (if available), full residential address, full mailing address, state-assigned voter ID number, date of registration, county of registration, date of removal from the voter rolls under KRS § 116.113(5), recent voter history, current registration status, and the basis for trigger removal under KRS § 116.113(5). Defendants' responses to these requests remain incomplete. To date, Defendants have provided no documents describing the implementation of KRS § 116.113(5). Further, Defendants have only released a *partial* list of the voters removed under KRS § 116.113(5)—and then only provided the voters' names and addresses—information that is insufficient to guarantee a reliable match or to broadly contact impacted voters.

40.    During briefing regarding Defendants' motions to dismiss Plaintiff's original Complaint, the Secretary claimed that approximately 20,000 registrations had been purged under KRS § 116.113(5). Dkt. 17-1 at 6. However, in response to Plaintiff's NVRA letters and open records requests pursuant to 52 U.S.C. § 20510(b), Defendants have still only produced a list of a little over 10,000 voters who were purged pursuant to KRS § 116.113(5).[8]

41.    Further, in response to the original NVRA letter sent on August 31, 2023, and a follow-up NVRA notice sent on September 19, 2024 (concerning

---

[8] The KRS 116.113(5) purge list was sent via email by the State Board of Elections to KFTC in response to its 2023 NVRA Notice Letter on October 6, 2023, *infra*, n.10.

Defendants' document production failures),[9] Defendants failed to provide any documents concerning the implementation of KRS § 116.113(5) and instead claimed that no such documents exist.[10] This position is contrary to that taken by Defendants during the motion to dismiss proceedings for Plaintiff's original Complaint. Dkt. 17-1 at 14–15. It follows that such a removal procedure is not self-executing and would require the creation of some number of directives or guidance documents to implement it, yet no such records have been provided as required by the NVRA's records request provision, 52 U.S.C. § 20510(b).

42.    Therefore, KFTC has reason to believe that Defendants are withholding data on voters purged pursuant to KRS § 116.113(5) and are withholding responsive records concerning the implementation of KRS § 116.113(5) and the procedures followed by Kentucky state and local officials to effectuate the statute.

---

[9] Exhibit D: Email transmittal and follow-up Notice Letter ("2024 NVRA Notice Letter") from Beauregard Patterson to Secretary Adams and Members of the State Board of Elections (September 19, 2024).

[10] Group Exhibit E: Secretary Adams response to KFTC's 2023 NVRA Notice Letter (September 7, 2023); State Board of Elections responsive email chain to KFTC's 2023 NVRA Notice Letter (September 18, 2023 through October 6, 2023); State Board of Elections response to KFTC's 2024 NVRA Notice Letter (October 4, 2024); Secretary Adams response to KFTC's 2024 NVRA Notice Letter (October 5, 2024).

***Injury to Plaintiff***

*Facts Supporting Organizational Standing*

43.    KFTC's mission is to challenge and change unfair political, economic and social systems by working for a new balance of power and a just society.

44.    At the core if its mission, KFTC uses its resources for grassroots power-building and increasing engagement in local, state, and national elections.

45.    One of the key ways that KFTC achieves its core mission is through its statewide voter engagement program, which includes statewide in-person voter registration, voter education, and Get Out the Vote ("GOTV") programs that seek to register and increase the participation of low-propensity voters such as people with low socioeconomic status, young people, people of color, the formerly incarcerated, and pre-trial detainees.

46.    As a key part of its voter engagement program, KFTC has organized and conducted voter registration drives for decades. As part of those drives, KFTC registers voters by providing eligible Kentuckians with a copy of the paper voter registration form and turning in the completed form to each voter's corresponding County Board of Elections.

47.    Its voter registration program represents a majority of its public-facing work, and it is recognized across the state for its voter registration tables.

48.    For Kentucky's 2023 Governor's race, KFTC registered over 2,000 new voters through its in-person voter registration program.

49.    As part of this voter registration program, KFTC provides important education and voter registration training, including webinars and field training, to its staff and allies committed to in-person voter registration work.

50.    In addition to the people KFTC helps to register by assisting with and turning in applications, its staff is trained to confirm whether a person is currently registered and provides information and education on how voters may register themselves and stay registered for election day if they are unable to complete a registration form at one of KFTC's in-person events.

51.    In addition to its voter registration program, KTFC engages in GOTV efforts across the Commonwealth.

52.    Its GOTV efforts include statewide door-knocking campaigns and phone-banking aimed to mobilize low-propensity voters who are already registered and eligible to vote in an upcoming election.

53.    KFTC reaches thousands of voters through its GOTV programming.

54.    As part of its GOTV programming, KFTC provides necessary information to prospective voters on where, when, and what eligible Kentuckians need to vote. Also, KFTC GOTV staff often may educate or assist voters on how to review and confirm their voter registration status in preparation for an upcoming election.

55.    The illegal effects of KRS § 116.113(5) directly frustrate KFTC's civic mission and causes it to waste limited financial resources and staff time.

56.    On information and belief, Defendants' enforcement of KRS § 116.113(5) has already and will continue to illegally purge eligible voters that KFTC has registered and/or mobilized via its in-person GOTV program.

57.    On review of the partial list that Defendants provided of 10,073 individuals purged under KRS § 116.113(5), KFTC discovered 79 names which matched the first, last, and middle names of individuals who were served by KFTC's GOTV program. For 38 of these 79 individuals, KFTC was able to confirm both a name and an address match when comparing Defendants' purge list with voting records and KFTC's internal records. Further, having reviewed these registrants' voter history, KFTC has reason to believe that several of these voters are still eligible Kentucky voters who were purged in error under KRS § 116.113(5).

58.    Moreover, on reviewing Defendants' partial purge list, KFTC discovered 32 names which matched the first, last, and middle names of

individuals who were served by KFTC's voter registration program. For at least 10 of these individuals, KFTC was able to confirm both a name and an address match when comparing Defendants' purge list with voting records and KFTC's internal records. KFTC has reason to believe that several of these voters are still eligible Kentucky voters and were purged in error.

59. Having reviewed the partial list of registrants purged under KRS § 116.113(5), KFTC discovered that at least 12 of the above individuals, who were served by KFTC's voter engagement programs, were illegally and erroneously purged from the rolls.

60. Each of these individuals voted in Kentucky's 2024 election cycle, at the address on file in their voting record, after earlier being subjected to a purge under KRS § 116.113(5).

61. Because of Defendants' violation of the NVRA, these individuals were wrongfully purged from the voter rolls and needlessly forced to re-register.

62. These Kentucky voters should have first received a notice of election officials' (evidently erroneous) belief that they had changed residence to another state and should have been entitled to remain registered during the statutory waiting period until they were able to vote or otherwise confirm their status.

63.    These individuals and all duly registered, eligible Kentucky voters have a federal statutory right to remain registered to vote unless the Defendants comply with the procedural requirements of the NVRA. These congressionally mandated safeguards benefit eligible, duly registered voters.

64.    The full purge list may well reveal additional individuals contacted by KFTC as part of its civic engagement work who have been impacted by Defendants' unlawful purges under KRS § 116.113(5).

65.    By depriving registered voters and qualified citizens of the NVRA's safeguards prior to removing their names from the voting rolls, KRS § 116.113(5) creates the real and immediate risk that more of KFTC's target outreach population will be unlawfully removed from the rolls, violating their statutory rights under the NVRA and as a result putting their ability to cast their vote in jeopardy.

66.    Defendants' unlawful purges have forced KFTC to waste its scarce resources and staff time devoted to registering and engaging voters. Inevitably, it will be forced to waste time and money re-registering voters who should never have been removed from the rolls, and it must educate new registrants on how to avoid or contest Defendants' unlawful purging.

67.    Because of Defendants' unlawful and erroneous purges, KFTC has used resources to register voters through its drives and to contact voters through its GOTV program, who ultimately find themselves disenfranchised

on election day. Consequently, the money, staff time, and other resources KFTC used on these voters were ultimately wasted because of Defendants' actions.

68.     Moreover, to try to mitigate these losses, KFTC has been forced to divert some of its limited resources to further expand its voter education efforts to teaching registrants how to monitor their voter registration status and how to contest an erroneous purge under KRS § 116.113(5) via the procedure outlined in KRS § 116.113(6). This would not be necessary if Defendants acted in compliance with the NVRA. However, this additional education has been necessitated by Defendants' enforcement of KRS § 116.113(5), which both conflicts with the NVRA on its face and as interpreted and applied by Defendants. Further, without providing this expanded voter education, KFTC would otherwise be forced to waste additional time, money, and other resources re-registering voters who were a part of its voter engagement program and were unlawfully removed by Defendants.

69.     As a result of the increased demands on staff time created by KRS § 116.113(5), KFTC's voter engagement programming has additional limits on the overall reach of its voter engagement programming. Limits that would not exist but for the 2021 enactment of and Defendants subsequent enforcement of KRS § 116.113(5).

70. Furthermore, as KRS § 116.113(5) ensnares elgible Kentucky voters who registered through Plaintiff's voter registration program, KFTC will also suffer severe reputational harm in the communities where it has worked and continues to work to secure trust so that it can fulfill its core mission.

71. KFTC's voter registration program is clearly branded on all materials used by its canvassers. Its decades long voter registration program is KFTC's most public-facing work, and it is known throughout the state for its staffed voter registration tables. KFTC has a 38-year-old trusted brand throughout the Commonwealth—goodwill that has been hard-earned over decades. That trust will be damaged if the eligible voters registered through KFTC's program are unlawfully and erroneously removed from the voter rolls.

72. Because these voters have placed their trust in KFTC's knowledge as to the proper and lawful way to register and stay registered to vote, such consequences will deeply undermine voters' trust in KFTC as a reliable and knowledgeable organization.

73. Not knowing the details and effects of KRS § 116.113(5), community members whom KFTC has assisted will come to distrust KFTC, wrongly thinking that its canvassers did not provide correct information, guidance, and assistance, or even that their applications were submitted incorrectly. These negative outcomes will also severely undermine voters' faith

and trust in the electoral system, thereby undermining Plaintiff's mission to promote and foster sustained civic engagement among low-propensity voters and in underrepresented communities throughout Kentucky.

74.    Some voters registered by KFTC will likely refuse to engage in the voter registration process again, because of experiencing disenfranchisement from an unlawful and erroneous purge. Others who are persuaded to go through the registration process again will nevertheless have less trust in KFTC and the election system going forward.

75.    If Defendants continue to engage in unlawful purging under KRS § 116.113(5), KFTC foresees a loss of trust and a chilling effect on voter participation in the communities it serves.

## COUNT ONE
## Violation of NVRA, 52 U.S.C. § 20507(d), 42 U.S.C. § 1983

76.    Plaintiff incorporates every allegation of the preceding paragraphs as though fully set forth herein.

77.    Under the NVRA, if a state undertakes to remove registered voters on the basis of a change in residence, the state must provide that voter with notice, the opportunity to respond to that notice, and the statutorily required waiting period for response. In particular, the NVRA prohibits such removals unless the registrant either: (1) confirms the change of residence in writing, or (2) fails to respond to a notice, the contents and manner of mailing

of which are prescribed by the NVRA and fails to vote during the next two general federal election cycles after receiving the notice. 52 U.S.C. § 20507(d).

78.    Adequate notice for such a removal must be provided by "a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address." *Id*. § 20507(d)(2).

79.    On its face, KRS § 116.113(5), violates the NVRA by requiring the removal of voters without the requisite notice, response opportunity, and waiting period required by federal law.

80.    KRS § 116.113(5) does not require the State Board of Elections or local clerks to review a voter's written confirmation of a change in address before immediately removing that voter from the rolls. Under the provision,

> [u]pon receipt of notification from a local or state jurisdiction that a voter has registered to vote in the new local or state jurisdiction outside of the Commonwealth, the State Board of Elections shall within five (5) days cause the removal of the name of that person from the voter registration records that it maintains, except that no voter's name may be removed during the period of time the registration books are closed for any primary, regular election, or special election.

KRS § 116.113(5).

81.    Further, KRS § 116.113(5) does not permit state and local elections officials to initiate the NVRA's notice and waiting process when an out-of-state official fails to provide the voter's written confirmation of a change in residence. Rather, the Kentucky official is obligated to remove a voter within

5 days of receiving notice from an out-of-state official that the voter has registered in another state—irrespective of whether immediate removal would violate the NVRA.

82.    Consequently, the only procedure available to a voter who wishes to dispute cancellation, is post-removal relief, available under KRS § 116.113(6), for wrongfully removed voters.

83.    Therefore, KRS § 116.113(5) violates the NVRA's requirement that a voter may be removed from the rolls by reason of change of address only if "*the registrant*—(A) confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered," 52 U.S.C. § 20507(d)(1)(A) (emphasis added), or if the voter fails to respond to a confirmation notice or vote in the statutorily identified timeframe. *Id.* § 20507(d)(1)(B); *A. Philip Randolph Inst.*, 138 S. Ct. at 1838–39.

84.    By requiring cancellation of a voter's registration if an out-of-state election official merely informs Kentucky officials of a voter's change in residence, without providing the actual out-of-state registration form for the Kentucky officials' review, KRS § 116.113(5) does not provide a voter with notice and the statutorily required waiting period of two federal general election cycles to respond or vote.

85.    KRS § 116.113(5) threatens to purge voters registered by KFTC without notice, thus frustrating KFTC's voter registration program and forcing it to divert money, resources, and staff time to provide additional voter education to prospective registrants and voters as part of its voter engagement program and to re-register erroneously purged voters.

86.    On information and belief, registrants identified for cancellation under KRS § 116.113(5) have been removed from the voter rolls via procedures that violate Section 8(d) of the NVRA.

87.    Kentucky voters, including voters that KFTC serves, will continue to suffer a Section 8(d) violation on an ongoing basis, as Defendants engage in significant, unlawful purges under KRS § 116.113(5).

88.    Absent this Court's intervention, KFTC will continue to suffer irreparable injury, due to Defendants' implementation of KRS § 116.113(5), as it faces harm to its reputation and is ongoingly forced to waste its limited resources to educate its staff and eligible voters, whom it registers or contacts through its GOTV program, on the operational procedures of KRS § 116.113(5) and § 116.113(6).

89.     KFTC has no adequate remedy at law for these injuries that have ultimately been caused by Defendants' actions that have deprived voters of their federal statutory rights protected by the NVRA.

90.    Therefore, the Court should enjoin Defendants' enforcement of KRS § 116.113(5) in full. KRS § 116.113(5), a state statute, is in conflict with the plain requirements of the NVRA, a federal law, and is therefore preempted and void. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14–15 (2013) ("Because the power the Elections Clause confers is none other than the power to pre-empt, the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent . . . . Unlike the States' historic police powers, the States' role in regulating congressional elections . . . has always existed subject to the express qualification that it terminates according to federal law.") (internal citations omitted). The Kentucky Legislature must adopt procedures that comply with the NVRA's requirements if it wants Defendants to engage in cross-state address change list maintenance.

91.    Alternatively, if the implementation of KRS § 116.113(5) can be sufficiently narrowed to avoid a statutory conflict with the NVRA, this Court should declare and order that Defendants cannot initiate unnoticed and immediate purges under KRS § 116.113(5) without first complying with either the NVRA's "written confirmation" requirement or its "notice and waiting period" requirement. Specifically, the Court should declare that Defendants must engage in the first-hand review of a Kentucky voter's written confirmation that they have moved to another state before removing that voter

from the rolls. And the Court should enjoin Defendants from removing a voter under KRS § 116.113(5) when a Kentucky election official does not possess and review a voter's written confirmation of a change in address.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court order the following relief and remedies:

A.    Declare that the voter removal provisions of KRS § 116.113(5) violate 52 U.S.C. § 20507(d), or in the alternative, declare that Kentucky officials must review a voter's written confirmation of a change in address before initiating a purge under KRS § 116.113(5);

B.    Grant a permanent injunction enjoining Defendants and any officers, agents, employees, attorneys, and all persons who are in active concert or participation with them from cancelling the registration of Kentucky voters without following the required procedures set forth in 52 U.S.C. § 20507(d);

C.    Award Plaintiff's attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and/or 52 U.S.C. § 20510(c); and

D.    Award all such other and further relief as the Court deems to be just and equitable.

Dated: February 27, 2025

Respectfully submitted,

By: /s/ Beauregard William Patterson

Jackson Cooper
Kentucky Bar No. 94297
**KENTUCKY EQUAL JUSTICE CENTER**
201 West Short Street, Suite 310
Lexington, KY 40507
jackson@kyequaljustice.org
Phone: (502) 303-4062

Michelle Kanter Cohen*
(D.C. Bar No. 989164)
Beauregard William Patterson*
(WI State Bar No. 1102842)
**FAIR ELECTIONS CENTER**
1825 K St. NW, Suite 701
Washington, DC 20006
mkantercohen@fairelectionscenter.org
bpatterson@fairelectionscenter.org
Phone: (202) 331-0114

*Admitted Pro Hac Vice*

*Counsel for Plaintiff Kentuckians for the Commonwealth*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that the foregoing was filed on this 27th day of February, 2025 through the federal Case Management Electronic Case Filing (CM/ECF) system, which will generate a notice of electronic filing (NEF) to all users who have registered in this action:

Taylor Austin Brown
General Counsel
State Board of Elections
140 Walnut Street
Frankfort, KY 40601
Taylora.brown@ky.gov

Carmine Iaccarino
Sturgill Turner
333 West Vine Street, Ste. 1500
Lexington, KY 40507
carmine@sturgillturner.com

R. Kent Westberry
Bridget M. Bush
W. Wood Brown
Landrum & Shouse LLP
220 W. Main Street, Ste. 1900
Louisville, KY 40202
kwestberry@landrumshouse.com
bbush@landrumshouse.com
wbrown@landrumshouse.com

Jenni Scutchfield
Assistant Secretary of State
General Counsel
700 Capital Ave., Ste. 152
Frankfort, KY 40601
jscutchfield@ky.gov

/s/ Beauregard William Patterson