# Exhibit A

August 31, 2023

Hon. Michael G. Adams
Kentucky Secretary of State
Kentucky State Board of Elections
140 Walnut Street
Frankfort, Kentucky 40601

*Submitted Electronically and via U.S. Postal Service Certified Mail*

**Re: Notice of Violation of National Voter Registration Act of 1993, Section 8(d)**

Dear Secretary Adams:

On behalf of NAACP—Kentucky, Common Cause Kentucky, Kentuckians for the Commonwealth, and Appalachians for Appalachia, as well as other similarly situated organizations, we write pursuant to 52 U.S.C. § 20510(b) to notify you that KRS § 116.113(4), as amended by HB 574 (2021), violates the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501–20510. Specifically, subpart (4), violates Section 8 of the NVRA, 52 U.S.C. § 20507, by requiring cancellation of a registered Kentucky voter's registration within 5 days of "receipt of notification from a local or state jurisdiction that a voter has registered to vote in the new local or state jurisdiction outside of the Commonwealth."

As described in more detail below, the NVRA establishes clear requirements states must meet before removing a voter from the registration rolls on the grounds that the voter has moved from one jurisdiction to another. Before being removed from the registration rolls, a voter who has not confirmed the move must (i) receive a formal notice, in writing, that the voter's address needs to be confirmed; and (ii) be given the opportunity to respond to the notice or demonstrate continued residency by voting. However, the plain language of KRS § 116.113(4) denies voters formal notice and the statutorily mandated period in which to respond or vote, prior to removal. Although subpart (5) outlines a protest process by which a removed voter may have his/her registration restored, a voter can only initiate this process "[f]ollowing the purge of [the voter's] name from the records of the State Board of Elections." KRS § 116.113(5). As a result, the amended statute does not comply with 52 U.S.C. § 20507(d)(1).

In February of this year, your office removed approximately 127,000 registrants from the voter rolls.[1] So that we can better understand how KRS § 116.113(4) has informed voter purges since its implementation, **we respectfully request the following records, pursuant to Section 8(i)(1) of the NVRA, 52 U.S.C. § 20507(i)(1) and KRS 61.870 et. seq.:**

1. An electronic record, such as a .txt or .xls file, reflecting the following information for each registered or previously-registered Kentucky voter recommended by a local or state jurisdiction for removal from Kentucky's official list of eligible voters under KRS § 116.113(4) since June 29, 2021, on the grounds that a voter has registered to vote in a

---

[1] https://elect.ky.gov/Resources/Documents/2023%20Purge%20One%20Pager.pdf.

new local or state jurisdiction outside of the Commonwealth: the voter's first name, middle name, last name, suffix, birthdate, phone number, email address (if available), full residential address, residential zip code, full mailing address, mailing zip code, state-assigned voter ID number, date of registration, county of registration, date of removal (if any), date the person last voted (if any), current Kentucky voter registration status, the basis for believing the voter had moved outside of Kentucky, and data related to any correspondence that was sent to the applicant or received from the applicant regarding their registration address.

2. Copies of all communications, instructions, memoranda, guidance documents, or similar documents issued by your office or the State Board of Elections to county election officials
   a. Pertaining to the implementation of KRS § 116.113(4), as amended by 2021 Kentucky Laws Ch. 197, § 5;
   b. Defining the phrase "notification from a local or state jurisdiction that a voter has registered to vote in the new local or state jurisdiction outside of the Commonwealth" as it appears in KRS § 116.113(4);
   c. Reflecting templates of communications with voters related to actions taken pursuant to KRS § 116.113(4);
   d. Describing the process to be followed for identifying voters who have potentially moved outside of Kentucky and/or confirming whether such voters have in fact moved outside of Kentucky, pursuant to KRS § 116.113(4); and/or
   e. Describing the process to be followed for cancelling a voter's registration pursuant to KRS § 116.113(4).

Furthermore, we urge your office and the State Board of Elections to take steps necessary to bring Kentucky into compliance with the NVRA.

### A. The NVRA has a statutorily-mandated notice process for voter removal on the basis of a change in residence. Consequently, election officials cannot simply remove voters based on information from another jurisdiction.

Section 8(d) of the NVRA, 52 U.S.C. § 20507(d), prohibits a state from cancelling the registration of a voter believed to have moved except in two instances. It provides:

**(1)** A State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant—

**(A)** confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or

**(B)(i)** has failed to respond to a notice described in paragraph (2); and

**(ii)** has not voted or appeared to vote (and, if necessary, correct the registrar's record of the registrant's address) in an election during the period beginning on

    the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.

52 U.S.C. § 20507(d)(1). The Supreme Court has construed the statute as prohibiting a state from removing "a registrant's name on change-of-residence grounds unless either (A) the registrant confirms in writing that he or she has moved or (B) the registrant fails to return a preaddressed, postage prepaid 'return card' containing statutorily prescribed content" and fails to vote "for a period covering two general elections for federal office (usually about four years)." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1838–39 (2018). "If the State does not send such a card or otherwise get written notice that the person has moved, it may not remove the registrant on change-of-residence grounds." *Id.* at 1839; *see also U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 381–82 (6th Cir. 2008) ("We believe that, if a person is a 'registrant,' a state may not remove his or her name from an official registration list on the grounds that his or her residence has changed unless the specified criteria of [52 U.S.C. § 20507(d)] are met.").

    The consent judgment entered in *Judicial Watch v. Lundergan* is not to the contrary and did not require Kentucky to adopt the specific removal process outlined under KRS § 116.113(4). In fact, that agreement explicitly requires the state to follow the removal procedures established in 52 U.S.C. § 20507(d). *See* Consent Judgment, ¶¶ 31(c), 34(d)(ii), 34(g), ECF No. 39, No. 3:17-cv-94 (E.D. Ky. July 3, 2018).

    Recently, the Seventh Circuit upheld a preliminary injunction issued against Indiana's Crosscheck law, which required county voter registration offices to cancel a voter's registration if an office determined that the voter's record matched that of a voter registration record subsequently opened in another state. In assessing whether the records matched, the law required an office to use the voter's first name, last name, date of birth, and other "confidence" factors. *See Common Cause v. Lawson*, 937 F.3d 944, 958 (7th Cir. 2019). The Seventh Circuit found that the plaintiffs were likely to succeed on the merits of their NVRA claim because the NVRA "emphasizes the state's duty to communicate—or at least attempt to communicate—directly with a voter before it removes that voter's name from the rolls." *Id.* at 961. It explained:

> To summarize, this scheme forbids a state from removing a voter from that state's registration list unless: (1) it hears directly from the voter via a "request" or a "confirm[ation] in writing" that the voter is ineligible or does not wish to be registered; or (2) the state goes through the statutorily prescribed process of (a) notifying the voter, (b) giving the voter an opportunity to respond, and (c) then waiting *two* inactive election cycles before removing a suspected ineligible voter who never responds to the notice. Both of these avenues focus on direct contact with the voter. The accuracy or lack thereof of the state's information concerning the voter's change in residence makes no difference under the NVRA. The statute does not set an accuracy threshold; it relies instead on follow-up with the individual voter.

*Id.* at 959 (emphasis and alteration in original). According to the court, the Indiana law likely violated the NVRA by failing to employ this minimal process. *Id.* at 961. As relevant here, the court also stated that "[r]egistering to vote in another state is not the same as a request for

removal from Indiana's voting rolls," *id.* at 960, declining to decide whether a voter registration form submitted in one state constitutes written confirmation of a change of residence to officials in the voter's former state of residence, within the meaning of 52 U.S.C. § 20507(d)(1)(A). *Id.* at 961.

In 2020, Indiana enacted legislation to amend the challenged statutes. *See* 481 F. Supp. 3d 799, 807 (S.D. Ind. 2020). Nonetheless, the district court determined that the new law also failed to comply with the NVRA's statutorily-mandated notice process and granted summary judgment to the plaintiffs. *Id.* at 815. The Seventh Circuit affirmed the grant. *League of Women Voters of Ind. v. Sullivan*, 5 F.4th 714, 724 (7th Cir. 2021) ("If this new scheme sounds familiar, that's because it is the same as the procedure found in [the previous law] that violated the NVRA."). The court again concluded that the law "impermissibly allow[ed] Indiana to cancel a voter's registration without either direct communication from the voter or compliance with the NVRA's notice-and-waiting procedures." *Id.* It suggested that cancelling a voter's registration upon receipt of out-of-state voter registration information would only satisfy the NVRA if they received copies of the voter's out-of-state registration form specifically containing an authorization of cancellation. *Id.* at 727. The Seventh Circuit's interpretation of the NVRA is consistent with the Supreme Court's reading of the statute and is persuasive authority that implementing KRS § 116.113(4) as written violates the NVRA.

### B. KRS § 116.113(4) suffers similar deficiencies as the Indiana Crosscheck law by immediately removing voters based on information received from out-of-state officials rather than voters themselves.

KRS § 116.113(4) does not require the State Board of Elections or clerks to have contact with a voter believed to have moved out of state before removing the voter from the rolls; instead, it requires immediate cancellation. Under the new provision,

> [u]pon receipt of notification from a local or state jurisdiction that a voter has registered to vote in the new local or state jurisdiction outside of the Commonwealth, the State Board of Elections shall within five (5) days cause the removal of the name of that person from the voter registration records that it maintains, except that no voter's name may be removed during the period of time the registration books are closed for any primary, regular election, or special election.

2021 Kentucky Laws Ch. 197, § 5. HB 574 left unchanged the current provision establishing a process by which a voter may protest the person's removal from the rolls for a reason authorized under KRS § 116.113. Pursuant to that process,

> [f]ollowing the purge of a name from the records of the State Board of Elections, the state board shall notify the clerk of the county in which the voter lived of the action; and the county clerk shall within ten (10) days update the county voter registration files to reflect the necessary change. If a protest is filed by the voter, the county board shall hear it at its next regular monthly meeting. If the county board decides in favor of the protesting voter, the voter's registration record shall

>be restored, including his voting record. If the protest is filed while the registration books are closed and the county board decides in favor of the protesting voter, the county board shall issue the voter an "Authorization to Vote" for the upcoming election and the voter's record shall be restored when the registration books open following the election.

KRS § 116.113(4) (eff. Jul. 13, 1990); KRS § 116.113(5) (eff. Jun. 28, 2021). Thus, KRS § 116.113, as revised by HB 574, does not require that pre-removal notice be sent to a registered Kentucky voter believed to have registered to vote outside Kentucky, and provides only post-removal relief for wrongfully removed voters.

On their face, these changes violate federal law. Specifically, this law is contrary to the NVRA's requirement that a voter may be removed from the rolls by reason of change of address only if "*the registrant*—(A) confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered," 52 U.S.C. § 20507(d)(1)(A) (emphasis added), or if the voter fails to respond to a confirmation notice or vote in the statutorily identified timeframe. *Id.* § 20507(d)(1)(B); *A. Philip Randolph Inst.*, 138 S. Ct. at 1838–39. By contrast, KRS § 116.113(4) requires cancellation of a voter's registration if an *out-of-state election official*—and not the voter in question—informs Kentucky officials of a potential out-of-state registration by that voter. As noted above, it also does not provide a voter with notice and a waiting period of two federal general election cycles to respond or vote. This process raises the risk that inaccurate list matching—a common pitfall—will result in erroneous removal of still-eligible voters.

We agree that accurate voter registration rolls are an important part of election administration. To that end, the NVRA safeguards accuracy, the freedom to vote, and the right to procedural due process by outlining specific steps states must follow before cancelling a voter's record due to a change of address. *See U.S. Student Ass'n Found.*, 546 F.3d at 381 (Section 8(d) "limits the methods which a state may use to remove individuals from its voting rolls and is meant to ensure that eligible voters are not disenfranchised by improper removal.").

This letter constitutes notice to you as Kentucky's chief election official pursuant to 52 U.S.C. § 20510(b) that your enforcement of KRS § 116.113(4) violates the NVRA in the above-described manner. If the violations identified above are not corrected, we may seek declaratory or injunctive relief to remedy these violations. *See* 52 U.S.C. § 20510. If you wish to discuss this matter, please contact me at bpatterson@fairelectionscenter.org, or via voicemail to 202-331-0114.

Thank you for your attention to this matter and for your work on behalf of Kentucky voters.

    Sincerely,

    **Beauregard Patterson, Counsel**
    **Fair Elections Center**
    1825 K Street NW, Suite 701
    Washington, D.C. 20006

(202) 331-0114

Wm. R. (Rick) Adams
Kaplan Johnson Abate & Bird LLP
710 W. Main Street, Fourth Floor
Louisville, KY 40205
(502) 242-6205

Page **6** of **6**