UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| KENTUCKIANS FOR THE COMMONWEALTH,  )<br>  )<br>*Plaintiff*,  )<br>  )<br>v.  )<br>  )<br>MICHAEL ADAMS, *et al*.  )<br>  )<br>*Defendants*.  )<br>  ) | Case No. 3:24-cv-00387-BJB<br><br>Judge Benjamin J. Beaton |

**THE STATE BOARD OF ELECTIONS' REPLY IN SUPPORT OF ITS
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

The Commonwealth, through its elected representatives, has chosen a commonsense method to ensure clean voter rolls that aligns with the NVRA's core purposes: increasing voter registration and participation, protecting the integrity of elections, and ensuring accurate and up-to-date voter rolls.[1] While the NVRA requires certain notification procedures when a voter will be removed from the rolls for a change in residence, the challenged statute demands removal from Kentucky's voter rolls when the Board has confirmed a voter's eligibility to vote elsewhere.

The essence of the Association's claim is that the NVRA contains the exclusive reasons for a voter to be removed from the rolls. If true, that construction of the NVRA "would seriously interfere with the States' constitutional authority to set and enforce voter qualifications,"[2] and thus pose serious constitutional questions.[3] The Association's preferred interpretation risks

---

[1]  52 U.S.C. § 20501(b)(1)–(4).
[2]  *Husted*, 584 U.S. 756, 781 (Thomas, J. concurring).
[3]  *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) ("[I]t is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").

1

"overextending [the NVRA's] pre-emptive reach" beyond "the strict requirements of the statutory command."[4]

There is another way. The NVRA's text addresses removal in just three circumstances: request by the registrant, criminal conviction or mental incapacity, or change in residency. Under *Bell v. Marinko*, the Sixth Circuit has said that those are not the exclusive reasons for removal,[5] and the NVRA's text does not address a specific procedure in the context of a change in *registration*. The Association may prefer the Board use the same notification procedures for a change of residence, but "such arguments are properly addressed to the legislature"—not this Court.[6] As a textual matter, the NVRA's change of residence procedures apply in exactly those circumstances—a change in *residence*. Here, however, the challenged statute addresses something different—not subject to the text of the NVRA—a change in *registration*. There are no procedures for that under the NVRA.[7] Alternatively, the Court may determine that a request to register elsewhere is a request to be removed from the rolls in Kentucky, consistent with the NVRA's text,[8] just as the drafters understood those words.[9] On these bases, the Association fails to state a claim.

***The Association lacks standing.*** More fundamentally, the Association lacks standing to challenge the statute and the Board's enforcement of it. Standing is the central question at this

---

[4] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 21 (2013) (Kennedy, J. concurring in part and concurring in the judgment).
[5] *Bell v. Marinko*, 367 F.3d 588, 591 (6th Cir. 2004).
[6] *Ferguson v. Skrupa*, 372 U.S. 726, 731 (1963).
[7] At oral argument, the Court suggested there may be some tension if the NVRA were to address removal procedures in some contexts and not others. Again, the circumstances covered by the challenged statute are unlike those covered by the NVRA. Here, the voter remains eligible in one jurisdiction. The NVRA addresses circumstances where the voter is simply removed from the rolls altogether. Regardless, it is not for this Court to assess the "wisdom, need, or appropriateness of the legislation." *Olsen v. Nebraska ex rel. W. Reference & Bond Ass'n*, 313 U.S. 236, 246 (1941).
[8] 52 U.S.C. 20507(a)(3)(A) (". . . at the request of the registrant.").
[9] S. Rep. No. 103–6, at 31 (1993) (explaining that a 'request' by a registrant would include actions that result in the registrant being registered at a new address, *such as registering in another jurisdiction* or providing a change-of-address notice through the drivers license process that updates the voter registration) (emphasis added); H.R. Rep. No. 103–9, at 14–15 (1993) (same).

stage: whether the Association met its burden[10] to establish that its alleged injury is "'concrete'—that is, 'real, and not abstract.'"[11] As grounds, the Association chooses two theories: its alleged diversion-of-resources theory and an alleged reputational harm. Neither is sufficient. Thus, the Association has not "plausibly alleged standing's elements at the pleading stage."[12]

According to the Association, a favorable decision will provide "substantial and meaningful relief."[13] Yet the Association does not clearly explain *how*. The Association provides no clear-cut explanation of any non-speculative harms that would assure this Court that it seeks anything more than settling a legal disagreement about how the law should work. At oral argument, the Court asked the Association for its "factual basis that you-all could allege consistent with Rule 11 that would show that additional staffing expenditure was necessary to address the risk of an improper removal."[14] The Response offers nothing new in answer to that question.

***The Association's alleged diversion-of-resources theory***. According to the Association, it has had to "allocate additional resources to its voter education program so that it can continue to provide eligible Kentuckians with all the resources needed to vote in upcoming elections,"[15] and the increased voter education that it must deliver "creates additional demands on staff time which ultimately limit the overall reach KFTC can have with its current staffing."[16] Yet the Association relies on outdated precedent in *Havens* and fails to meaningfully distinguish its alleged harm from the sort of harm that was rejected by the United States Supreme Court in *Alliance for Hippocratic Medicine*. As the Supreme Court recognized, "*Havens* was an unusual case, . . . [the] Court has

---

[10] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).
[11] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021).
[12] *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 171 (6th Cir. 2022).
[13] Resp. at 14.
[14] Hearing Tr. [DE 31] at 18, PageID.
[15] Resp. at 9 (quoting Compl. ¶ 68).
[16] *Id*.

3

been careful not to extend the *Havens* holding beyond its context,"[17] and "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way."[18]

To thread its standing claim with the holding in *Alliance*, the Association claims the challenged statute has interfered with its "core business activities." Here again, however, the Association fails to connect its allegation to any concrete, perceptible harm.[19] The Association's "mission is to challenge and change unfair political, economic and social systems by working for a new balance of power and a just society," and its helps "confirm whether a person is currently registered and provides information and education on how voters may register themselves and stay registered for election day if they are unable to complete a registration form at one of KFTC's in-person events."[20] While it baldly asserts that it has been "forced to allocate additional resources to its voter education program so that it can continue to provide eligible Kentuckians with all the resources needed to vote in upcoming elections," it gives only "threadbare recitals" and "mere conclusory statements"[21]—no factual detail to support its claim; no discussion of the nature of the resources, the costs to its bottom line, or any explanation about how its "core business" activity has been "perceptibly impaired."[22] Nor does it explain how its efforts were "wasted." In fact, the Association's alleged standing is hinged on twelve voters who it merely claims were wrongly purged. Yet it admits those voters *voted* in the 2024 election cycle,[23] and makes no claim that its

---

[17] *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024).
[18] *Id.*
[19] *Id.* at 395 (discussing the "perceptibl[e] impair[ment]" to HOME's ability to provide counseling and referral services that "directly affected and interfered with HOME's core business activities").
[20] First Am. Compl. ¶¶ 54, 50.
[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).
[22] *All. for Hippocratic Med.*, 602 U.S. at 395.
[23] First Am. Compl. ¶ 59.

additional resources or efforts had anything to do with the subsequent re-registration alleged or the voters' ability to actually vote. In this way, the Association has failed to meet its burden to demonstrate standing.

***The Association's alleged reputational harm***. The Association alleges that because the Board's enforcement of the statute might suggest to its members that the Association's conception of the law is wrong, the Association might suffer some reputational harm. The Association asks the court to infer that a voter removed from the rolls pursuant to a statute that the Association has challenged would blame the Association for their removal—rather than their registration in another state—and that would somehow diminish the Association's reputation. That daisy chain of inferences alleging a speculative harm—if any—is ultimately a request for an advisory opinion—not a concrete injury. "[F]ederal courts do not issue advisory opinions."[24] A mere disagreement—"however sharp and acrimonious it may be"—is not enough to confer standing to sue in federal court,[25] and this Court must deny standing to "plaintiff whose likelihood of suffering any concrete adverse effect from the challenged action [is] speculative."[26]

***The Association's facial challenge***. Finally, despite its claim to the contrary, the Association brings a *facial* challenge to KRS 116.113(5) based on its alleged organizational standing. To "succeed in a typical facial attack, a plaintiff must establish that no set of circumstances exists under which the statute would be valid."[27] Put another way, "if a court recognizes that there are ways in which the two statutes could be implemented in harmony rather

---

[24] *TransUnion LLC v. Ramirez*, 594 U.S. at 424.
[25] *Diamond v. Charles*, 476 U.S. 54, 62 (1986).
[26] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 583 (1992).
[27] *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013).

5

than in conflict, then that would save the state statute from facial invalidity."[28] In a case like this, the Supreme Court has said it is "substantially more difficult to establish" standing.[29]

To be blunt, the Association cannot meet its burden on the facial challenge that it did bring. To do so, it would have to show "that no set of circumstances exist under which the statute would be valid."[30] Michigan, however, includes on its voter registration form an express request signed by the voter to cancel that voter's previous registration.[31] That is a written request from the registrant confirming cancellation.[32] This one example alone defeats the Association's facial challenge because it demonstrates how KRS 116.113(5) may be implemented even according to the Association's conception of how the NVRA should operate.

Recognizing its insurmountable burden in its facial challenge, however, the Association tries to change footing. The Association claims the Board has "raised no argument to counter Plaintiff's as-applied challenge."[33] Of course, "an as-applied challenge . . . argues that a law is unconstitutional as enforced *against the plaintiffs before the court*."[34] Yet the Association did not bring an as-applied challenge. Nor could it have. It abandoned its as-applied challenge when it dropped suit on behalf of its members, and the statute simply does not apply *to the Association*.[35] The Association wants to rely on the alleged harm to specific individuals without naming those individuals or meeting the standard for associational standing to bring an as-applied challenge. It

---

[28] Hearing Tr. at 36.
[29] *All. for Hippocratic Med.*, 602 U.S. at 382.
[30] *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 691 (6th Cir. 2015).
[31] *See* Michigan Voter Registration Application and Change of Address Form, available at https://tinyurl.com/4uybch4w (providing that a signature "authorize[s] the cancellation of any previous registration").
[32] *See, e.g.*, 52 U.S.C. 20507(a)(3)(A) (". . . at the request of the registrant.").
[33] Resp. at 24.
[34] *Speet v. Schuette*, 726 F.3d at 871–72 (emphasis added).
[35] *Compare* Compl. ¶ 5 [DE 1] ("[The Association] sues herein on its own behalf and on behalf of its members.") *with* First Am. Compl. ¶ 5 [DE 35] ("KFTC sues herein on its own behalf.").

cannot do that. While those individuals *may* have standing, the Association cannot use the alleged harm to those individuals to manufacture *its* standing.[36]

## Conclusion

For these reasons, the Court should grant the State Board's motion to dismiss.

    Respectfully submitted,

*/s/ Carmine G. Iaccarino*
Carmine G. Iaccarino
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1500
Lexington, KY 40507
Telephone: (859) 255-8581
Carmine@sturgillturner.com

and

Taylor Austin Brown
State Board of Elections
140 Walnut Street
Frankfort, Kentucky 40601
TaylorA.Brown@ky.gov

*Counsel for the State Board of Elections and each of its members in their official capacities as Board members*

## CERTIFICATE OF SERVICE

I certify that on April 17, 2025, I filed this document electronically with the Clerk of this Court using the Court's CM/ECF system, which will send notification of such filing to all parties registered to receive electronic filings.

*/s/ Carmine G. Iaccarino*
*Counsel for Defendants*

---

[36] *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 543 (6th Cir. 2021) (holding that to established associational standing, the association must "identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct.").